**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION**

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA,** | ) | |
| Plaintiff, | ) | |
| vs. | ) | Case No. **5:15CR50061-001** |
| | ) | |
| **JULIAN RIVERA** | ) | |
| Defendant. | ) | |

## DEFENDANT'S SENTENCING MEMORANDUM

Comes now the defendant, Julian Rivera, by undersigned counsel, and does hereby respectfully move this Court as to the following: for a downward variance from the advisory guideline imprisonment range, to a sentence of a total of 360 months imprisonment. Defense counsel anticipates that the length of time necessary for the sentencing hearing should not exceed two hours.

### PRELIMARY CONCLUSION

Mr. Rivera is 21 years old and is a first time offender. While his actions are deserving of punishment, in comparison to other production cases this Court has seen, Mr. Rivera's conduct is not as aggravating. Mr. Rivera presents a low risk of recidivism with his age upon release. Mr. Rivera is extremely remorseful for his actions. The sentence requested of 30 years is very severe and is sufficient but not greater than necessary to achieve the goals of sentencing.

### PROCEDURAL BACKGROUND

On October 28, 2015, a superseding indictment was filed charging Mr. Rivera with one count of sexual exploitation of children and one count of attempted sexual exploitation of children in violation of 18 U.S.C. §2251(a) & (e), and one count of possession of child pornography in violation of 18 U.S.C. §2252A(b)(2). On October 30, 2015, Mr. Rivera appeared for arraignment on the superseding indictment. On December 11, 2015, Mr. Rivera appeared before Honorable

Erin Setser Magistrate Judge for a change of plea hearing. Mr. Rivera formally entered a plea of guilty to Count One and Count Three of the superseding indictment. Mr. Rivera has been in custody since his arrest on February 25, 2015. The final presentence report has yet to be filed. Sentencing is scheduled for March 29, 2016.

FACTS

On February 24, 2015, officers from the Springdale Police department received a report from a minor, H.H., that a Hispanic male had followed her after school, grabbed her and held her, and touched her between her legs. H.H. provided a description of a car that she had seen the male in. Officers compared other incident reports involving a Hispanic male exposing his genitals to teens. Based upon the description of the male and his car, investigators developed Mr. Rivera as the suspect in the incident reports.

On February 25, 2015, officers arrived at Mr. Rivera's residence and eventually placed him under arrest. Officer's seized a gold colored iPhone, which was described in several incident reports involving the Hispanic male exposing himself to minors. On February 26, 2015, officers applied for and received a search warrant for Mr. Rivera's residence, cell phone, and other computer equipment. Officers then located multiple videos on Mr. Rivera's cell phone of him filming minors walking and playing on playgrounds. Investigators also found the video in Count One of the Superseding Indictment where Mr. Rivera approached a minor, D.S., and placed her hand on his penis to aid in masturbation.

Officer's also located a video involving a minor, J.G., where Mr. Rivera masturbated in front of a fully clothed minor. The minor watched Rivera masturbate and Rivera's ejaculate hit the minor on her check. The minor then turned and ran to her apartment. Officers located another video involving a consensual sexual encounter with a 14 year old female, T.M. Rivera and the

minor had become intoxicated and engaged in sexual acts.  Officers also located multiple short

videos of Mr. Rivera exposing his genitals to minors, masturbating while watching minors, and

filming young teens and adult women walking in various public areas.

LAW AND ANALYSIS

Since 2005, the guidelines have been considered advisory, and are now just one of several

criteria a sentencing court considers when imposing a sentence.  *United States v. Booker,* 543 U.S.

220, 223 (2005).  The process a sentencing court must follow since *Booker* involves three steps;

first, it must determine the appropriate advisory sentencing range, then examine the propriety of a

traditional departure under the guidelines, and finally consider the factors set forth in 18 U.S.C. §

3553(a) to determine whether to vary from the guidelines.  *See U.S. v.* Garlewicz, 493 F.3d 933,

937 (8th Cir. (2007).

### A.  Determination of Advisory Guideline Range

As the final presentence report is yet to be filed, Mr. Rivera maintains his objections to the

initial report identified in Document 30.

### B.  Applicability of Traditional Departure

Mr.  Rivera is not seeking any traditional departure.

### C.  Application of § 3553(a) Factors to Determine if a Variance is Warranted

18 U.S.C. § 3553(a) is entitled "Factors to be considered in imposing a sentence," and

begins with the mandate that:

> "The court shall impose a sentence *sufficient, but not greater than necessary*, to
> comply with the purposes set forth in paragraph (2) of this subsection."  18 U.S.C.
> § 3553(a).  Emphasis added.

In deciding on an appropriate sentence, the court should consider the nature and circumstances of

the offense, and the history and characteristics of the defendant.  It should also consider the need

for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment. In addition, the court should also consider whether or not the sentence would provide adequate deterrence and protect the public from further crimes of the defendant. Along with a consideration of the advisory guideline range, the court should also contemplate the need for the sentence imposed to provide the defendant with medical treatment, vocational training, education, or correctional treatment. The court should also address the need for the sentence imposed to avoid unwarranted sentencing disparities. Each of these purposes can be satisfied with regard to Mr. Rivera with a sentence of 30 years.

### 1. Nature and Circumstances of the Offense

Mr. Rivera's actions in filming minors of a sexual nature is a terrible offense. Mr. Rivera has recognized that his actions can have a long lasting effect on the minors in the videos, and their families. However, as with every crime, even the offense of production of child pornography has a sliding spectrum of conduct. Not every action under a production offense is the same. While Mr. Rivera's conduct deserves punishment, his acts were not the most egregious in nature that would warrant a sentence recommended by the guidelines of 600 months.

Mr. Rivera did not engage in sexual intercourse with the minor D.S. Nor was there any oral sexual acts, violence, or threats. The minor was fully clothed and he placed her hand on his genitals for a matter of seconds, ejaculated, and then ran off. Mr. Rivera didn't engage in any actual sexual contact or touching of the minor J.G. J.G. was fully clothed, never touched Mr. Rivera, and never engaged in sexual intercourse or oral sex. Mr. Rivera never actually touched J.G. either. He masturbated in front of J.G., and when Mr. Rivera ejaculated it hit J.G. on the check. Although Mr. Rivera does engage in sexual acts with T.M., both T.M. and Mr. Rivera were intoxicated, and T.M. at the time was 14 years old. While Mr. Rivera's acts with T.M. are

repugnant, those acts surely can be distinguished from a production case involving similar sexual acts with babies and toddlers. Essentially, while deserving of punishment, Mr. Rivera's facts are not the "worst of the worst" when it comes to production of child pornography offenses.

### 2. History and Characteristics of the Defendant

Mr. Rivera was born in California in 1995. His parents came from Mexico around the mid '80s. Mr. Rivera grew up in a good house hold. He and his family spoke only Spanish. When he was 5 years old, Mr. Rivera and his family moved to Northwest Arkansas. Mr. Rivera first started learning English in Arkansas. He described that experience a struggle. He remembers feeling different and isolated from the other kids because he couldn't communicate with them. He felt like he did not fit in. He constantly struggled with, as Mr. Rivera explains it, as "not getting the words right." He tried to be a model student for his parents because "they worked so hard for me." It wasn't until the sixth grade that Mr. Rivera remembers that he began having a control with the English language. However, his reading skills were still very poor, and he was reading at a lower standard than all the other kids in his class.

Then, around the age of about 12 to 13, Mr. Rivera's outlook on school changed. He began making friends who, in their spare time, liked to drink, smoke weed, fight, and talk about gangs. It is with this group that Mr. Rivera first began drinking alcohol. He described a situation where his outlook on school changed from not focusing on academics to instead caring about "how he appeared, to be included with the in crowd, and not feel different." This group of friends made him feel included. At the age of 14, Mr. Rivera started smoking marijuana and his alcohol use increased. Around the same time his grades fall, and he began staying out late past curfew. PSR ¶ 132 and 133. Mr. Rivera did make an attempt to better himself after high school. In 2013 he applied for admission to the Northwest Technical Institute Automotive Service Technology

program.  While he passed the tests needed to be considered for the program, he was denied admission due to limited space.  See Exhibit A attached.  Mr. Rivera described this experience as "really frustrating" because he wanted to enter this program.  However, the rejection turned him back to drinking and marijuana.  This was another instance where Mr. Rivera stopped caring about his future.

The conduct of Mr. Rivera's offense of conviction, as well as the other videos of voyeurism, seem to span approximately 10 months.  Prior to this conduct, Mr. Rivera has only one criminal history point for driving while intoxicated offense in 2014.  Mr. Rivera was assessed a fine and alcohol treatment classes.  The remaining offenses involve traffic citations.  As a result, Mr. Rivera is in the lowest criminal history category of I.

One begins to think how Mr. Rivera engaged in this conduct to be before this Court for sentencing.  Unfortunately, counsel cannot fully articulate exactly why Mr. Rivera engaged in this conduct.  We can only speculate.  With that speculation, counsel can at least attempt to identify factors that may have contributed.  First and foremost, Mr. Rivera has an admitted past of drug and alcohol use at a young age.  That coincided with him making friends that had a negative influence on him, but accepted him and made him feel important.  As identified by letters of support from his family, his parents both worked full time jobs, often leaving Julian with a lack of direct guidance and discipline.  During that time, Mr. Rivera began looking at legal pornography, which he became addicted to.

Lastly, Mr. Rivera shared an experience in his past with defense counsel.  Mr. Rivera, when asked if he had a history of any abuse, stated that he did not.  When asked several times by counsel to confirm this, in attempt to understand his actions in this case, Mr. Rivera denied any "abuse."  Then, it occurred to counsel that Mr. Rivera is a very literal person, in that he doesn't remember

any experiences that he believes are "abuse." Undersigned counsel then asked Mr. Rivera a broader question, "Do you remember having any experiences in your youth where you felt uncomfortable." Mr. Rivera immediately recalled a story when he was approximately 5 years old. He and his family had just moved to Arkansas. While his parents were working, Mr. Rivera remembers being in a house with an older girl, possibly a babysitter. The girl began kissing Mr. Rivera on the mouth and touching his genitals on the outside of his pants. Mr. Rivera remembers feeling "weird about it" and "not knowing what to do." While this memory didn't, in Mr. Rivera's mind, rise to the level of abuse, it did stick with him and he recalls feeling uncomfortable.

While none of these past experiences justify Mr. Rivera's actions, as a whole they do being to demonstrate how a young man like Mr. Rivera has struggled with various life experiences.

### 3.  Adequate Deterrence; Protection of the Public

Thirty years is a deterrent to Mr. Rivera. He will be monitored in a prison, away from the general public, for the remainder of his youth. He will not have access to minors, and he will be deterred from committing similar crimes. Moreover, a sentence to 30 years in a federal prison for a first time offender, is a powerful message that will deter others. Upon his release, Mr. Rivera will be approximately 50 years old. Recidivism studies typically find that the older the prisoner when released, the lower the rate of recidivism. In 2003, the Bureau of Justice Statistics published a recidivism study of sex offenders released from prison in 1994. Patrick A. Langan et. al (2003), Bureau of Justice Statistics, U.S. Dept. of Justice, *Recidivism of Sex Offenders Released from Prison in 1994*, National Criminal Justice 198281.[1] The study showed that within 3 years of release, 5.3% of sex offenders were rearrested for another sex crime. *Id*. at 1. Of the 9,691 offenders studied, 4,295 were identified as child molesters. *Id*. Of the 4,295 child molesters, only

---

[1] Available at http://www.bjs.gov/content/pub/pdf/rsorp94.pdf

3.3% were rearrested for another sex crime.  For offenders 45 years and older, the rate of recidivism was also only 3.3%, the lowest of other ages. *Id.*

In imposing the least sentence sufficient to account for the need to protect the public from further crimes Mr. Rivera may commit, this Court should consider the statistically low risk of recidivism presented by Mr. Rivera's history and characteristics, and his age upon release.

### 4.  Medical Treatment, Vocational Training, Education, or Correctional Treatment

With the suggested sentence of 30 years, Mr. Rivera will have sufficient time to address these sentencing purposes.  Mr. Rivera will use this time to address his mental health, as well as exploring the reasons that motivated him committing this offense.  He will have access to counseling and treatment programs designed to change his behavior and reduce criminality and recidivism.  Moreover, he will have access to higher education and vocational programs that will also equip him to reenter society as a better person.

### 5.  Respect for the law; Provide Just Punishment

A sentence to 30 years for Mr. Rivera is just and demonstrates respect for the law.  He is 21 years old and will spend his youth in a federal prison.  Mr. Rivera will spend more time in prison than he has been alive.  During that time his parents will have passed away.  He will be in his early 50's upon release.  A sentence to 30 years sends a clear message to the public, and Mr. Rivera, that consequences of committing these acts and breaking the law are extremely severe. Under the circumstances of this case, the sentence requested is reasonable and just.

### 6.  Need to Avoid Unwarranted Sentenced Disparities

After a balancing of the § 3553(a) factors, a sentence of 30 years imprisonment would not result in an unwarranted sentencing disparity.  As mentioned above, there is a sliding scale even for production of child pornography offenses.  In *United States v. Scott Sholds*, 5:14CR50035-001,

(W.D. Ark. Nov. 7, 2014), the defendant pled guilty to four counts of production of child pornography and one count of possession of child pornography. The defendant had filmed four videos of himself engaging in vaginal and anal intercourse with a 2 year old minor, who was crying during the acts. The 2 year old was the daughter of the defendant's girlfriend. The defendant also had images of the 2 year olds buttocks and genitals. It should also be noted that Sholds had prior offenses involving multiple burglaries and thefts, criminal trespass, and assault, and was in a criminal history category of VI. This Court sentenced the defendant to 30 years on counts one and two for production to run consecutive, 30 years on count three, of which 240 months were consecutive and the remainder concurrent, 30 years on count four to run concurrent, and 20 years on the possession count to run concurrently with all other terms.

In *United States v. Jesse Oziah*, 5:13CR50103-001, (W.D. Ark., Aug. 15, 2014), the defendant was charged with 3 counts of production of child pornography and 2 counts of possession of child pornography. He pled guilty to 2 counts of production of child pornography. Due to the defendant having a prior conviction for sexual assault wherein the defendant put his mouth on the penis of a 5 year old boy, the statutory range per count was 25 to 50 years. In his offense of conviction, the defendant had performed oral sex on an 8 year old boy multiple times. The defendant also had the minor perform oral sex on him. Investigators also located at least 4,150 images of child pornography including prepubescent boys engaged in sexual acts. The guidelines recommended a sentence of 1200 months. This Court varied downward and sentenced the defendant to 360 months on count one of production, and 300 months on count two to run consecutively.

In *United States v. Glen Baughman*, 5:13CR50080-001 (W.D. Ark., Mar. 3, 2014), the defendant was charged with four counts of production of child pornography and one count of

possession of child pornography.  He pled guilty to two counts of production of child pornography.  The defendant's conduct involved 30 videos involving two minor victims.  One victim was a 7 year old female where the defendant, multiple times over the course of months, filmed himself repeatedly rubbing and touching the minor's vagina, and inserting his finger into her vagina.  The second victim involved a 7 year old boy where the defendant exposed the minor's penis and rubbed the child's penis with his finger.  The defendant also possessed 2,747 images and videos of child pornography on his computer and cell phone.  This Court sentenced the defendant to 360 months on both counts of production of child pornography, to run consecutively.

In the above cases, the defendants engaged in vaginal and anal intercourse with children, performed oral sex on children and had the children perform oral sex on them, and directly touched children's genitals.  For each count of production, the Court sentenced the defendants to the statutory maximum of 360 months.  Mr. Rivera's conduct presents the Court with facts that are production of child pornography; however, his actions do not rise to the level as the defendants in *Sholds*, *Oziah*, or *Baughman*.  Mr. Rivera's offense with D.S. involved a clothed minor touching Mr. Rivera's penis for a matter of seconds.   There was no intercourse, oral sex, or genital penetration.  His conduct with J.G. was attempted production, wherein Mr. Rivera masturbated in front of a minor.  No intercourse, oral sex, genital penetration, or any actual touching occurred.  The conduct with T.M. was admittedly some of Mr. Rivera's most egregious conduct.  He and T.M., engaged in actual sexual acts involving intercourse and oral sex.

While deserving of punishment, Mr. Rivera's acts with T.M., who was 14 years old at the time, are considerably distinguished from cases like *Sholds* (intercourse with a 2 year old minor), *Oziah* (oral sex with an 8 year old minor), and *Baughman* (sexual acts with two 7 year old minors).  On the sliding scale of these types of offenses, Mr. Rivera's conduct simply is not as aggravating

as other cases.  As such, a sentence to 600 months as recommended by the guidelines would create a sentencing disparity as it would punish Mr. Rivera along the same lines as these other offenders whose conduct was much more egregious.

CONCLUSION

When applying the § 3553(a) factors, and considering the nature of this offense as compared to other more aggravating production offenses, along with Mr. Rivera's lack of criminal history and low risk of recidivism upon his age at release, the sentence requested is sufficient but not greater than necessary to achieve the goals of sentencing.

WHEREFORE, Mr. Rivera respectfully requests this Court grant a downward variance from the advisory guideline range and impose a sentence of a total of 360 months imprisonment.

Respectfully submitted,

BRUCE D. EDDY
FEDERAL PUBLIC DEFENDER
WESTERN DISTRICT OF ARKANSAS

By:     /s/ *Joe Alfaro*_____
        Joe Alfaro
        Assistant Federal Public Defender
        3739 N. Steele Blvd., Suite 280
        Fayetteville, AR 72703
        (479) 442-2306

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that I electronically filed the foregoing with the Clerk of the Court using the CM/ECF System which will send notification of such filing to the following:  Dustin Roberts, AUSA, Diem Nguyen, U.S. Probation Officer, and I hereby certify that I delivered a copy to the following non CM/ECF participants: none.


         /s/ *Joe Alfaro* _____
         Joe Alfaro
         Assistant Federal Public Defender