IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

UNITED STATES OF AMERICA                    PLAINTIFF/RESPONDENT


v.            Criminal No. 5:15-cr-50061-001


JULIAN RIVERA                              DEFENDANT/MOVANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Currently before the Court is a 28 U.S.C. § 2255 motion filed by the *pro se* Defendant/Movant Julian Rivera ("Rivera") (ECF No. 52), the response of the United States ("Government")(ECF No. 57), and Rivera's Reply (ECF No. 58).   An evidentiary hearing is not warranted in this matter, as the § 2255 motion, the files, and the records in this case conclusively show that Rivera is not entitled to relief.   *See* 28 U.S.C. § 2255(b); *Watson v. United States*, 493 F.3d 960, 963 (8th Cir. 2007)("No hearing is required when the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which they are based").

## I.   BACKGROUND

On October 28, 2015, Rivera was charged in a three count Superseding Indictment[1] with two counts of the production of child pornography in violation of 18 U.S.C. §§ 2251(a) and (e) and one count of possession of an Apple iPhone brand cellular phone on February 25, 2015, that contained images of child pornography in violation of 18 U.S.C. §§ 2252A(a)(5)(B) and (b)(2). (ECF No. 13).   On October 30, 2015, Rivera was arraigned, entered a plea of not guilty, and was appointed a Federal Public Defender, Jose Alfaro.

---

[1] The Original Indictment was filed on September 16, 2015.

1

On December 11, 2015, Rivera, pursuant to a written plea agreement (ECF No. 21), pled guilty to Count One, the production of child pornography, and Count Three, the possession of child pornography.   (ECF No. 22).   The plea agreement states that if accepted by the Court, once the Court pronounced sentence, the Government would move to dismiss Count Two of the Indictment. (ECF No. 21 at 1).

The plea agreement set forth the following factual basis for the guilty plea:

a.  In February of 2015, the Springdale Police Department was contacted by a family member of a minor female reporting that a Hispanic male attempted to kidnap and sexual[ly] assault the minor as she walked home from school.   After a subsequent investigation, the Springdale Police Department arrested the defendant, Julian Rivera.   At the time of his arrest, Rivera's Apple IPhone was seized pursuant to a search warrant.

b.  A subsequent forensic examination of Rivera's IPhone revealed numerous videos of the defendant masturbating in-front of and sexually assaulting minors. Specifically, the images charged in Count One (1) of the indictment is a video depicting Rivera talking to and masturbating in-front of an approximately 5 year old female under the stairwell of an apartment complex in Springdale, Arkansas. During the video, Rivera uses the minor's hand to touch his penis and further masturbate himself.  This image was produced by Rivera in the Western District of Arkansas using his Apple IPhone on or about April 22, 2014.

c.  In addition to the video charged in Count 1 of the indictment, law enforcement has located other videos that fit the definition of child pornography as set forth in 18 U.S.C. § 2256(8).   These videos were also contained upon on Rivera's IPhone charged in Count 3 of the indictment, which was manufactured outside the state of Arkansas.

(ECF No. 21 at 4-5).   The guilty plea was accepted by the Court and written plea agreement was tentatively approved, subject to final approval at sentencing.   (ECF No. 23).

The Presentence Investigation Report ("PSIR")(ECF No. 32), provides further factual detail regarding Rivera's conduct.

12. On February 24, 2015, officers with the Springdale, Arkansas, Police Department (SPD) were dispatched to take a report on a possible sexual assault.

2

Gabriel Gambio called the SPD and advised that someone attempted to rape his sister H.H. (age 13) while she was walking home from school. Officers arrived at the residence and made contact with H.H. and her older sister Michelle Hernandez. Officers spoke with H.H. regarding this incident and she advised that she was dropped off by the school bus and said a guy tried to rape her while she was walking home. H.H. described the male to be 5 feet 10 inches tall, wearing a black sweater and a baseball cap. The male was later identified as the defendant, Julian Rivera.

13. H.H. said that while she was walking home, Rivera began following her and as she began walking faster, he also increased his speed. Rivera ultimately caught up to her and grabbed her from behind and placed his arm around her throat. H.H. stated that she ducked under the arm and started to run, but Rivera grabbed her again and then grabbed her between the legs. More specifically, H.H. advised officers that Rivera grabbed her vagina. H.H. stated she then screamed and pulled away and was able to run home. H.H. said that Rivera had a gold-colored iPhone in his hand and it appeared as if he was taking pictures or filming her during the incident. Additionally, H.H. provided a description of the Rivera's vehicle. H.H. informed that she had seen Rivera previously parked in the neighborhood where she was attacked and approximated that he was there twice a week.

14. On February 25, 2015, officers reviewed numerous incident reports through the Springdale police database involving an unknown male (later identified as Julian Rivera) exposing his genitals to young teens. The reports were filed between May 2014 through February 2015 and summaries of the reports are as follows:

15. On May 20, 2014, (incident #14-3003) Rivera pulled up to a 12-year-old juvenile female as she walked home from school. She stated that Rivera asked her if she had seen his dog but when she approached the passenger side of the vehicle, she saw through the window that Rivera had his penis sticking out of his pants. This victim was able to provide a brief physical description of Rivera and his vehicle.

* * *

20. Utilizing the totality of descriptions, officers were able to locate Julian Rivera and his vehicle in the database. Officers then provided H.H. with a photo of Rivera, which she positively identified as the person who had assaulted her.

21. On February 25, 2015, officers traveled to Rivera's residence located at 2578 Brookside in Springdale and made contact with Rivera. When asked about his whereabouts on February 24, 2015, Rivera stated that while driving on his way to work in Lowell, he made several turns near Bayyari Elementary in Springdale. Rivera advised this occurred around 4 p.m. and after driving around, he decided not to go into work that day.

22. Rivera admitted to officers that he had a gold-colored iPhone and that he used to watch pornography on that phone. Rivera stated that he watched whatever his phone pulled up, and he indicated he had no type or preference when watching pornography. Additionally, Rivera informed officers his phone contained videos of him and his friends but he refused to answer when he was asked if he knew the girl from the incident the day prior. Rivera was then asked what he did after he failed to go to work on February 24, 2015, and Rivera stated he and a friend then hung out for the remainder of the day.

23. Officers asked for Rivera's friend's phone number to corroborate this story. Rivera then stepped away and went inside the residence to retrieve the phone number. Officers noted that Rivera was inside the residence far longer than necessary to retrieve a phone number. Officers then acquired consent to enter the residence from Rivera's father and traveled to the back bedroom where officers observed Rivera standing in the corner of the room. It appeared to officers that Rivera was furiously deleting evidence from his cellphone. Officers then placed Rivera under arrest and transported him to the SPD for further questioning.

24. Once Rivera arrived at the SPD Criminal Investigations Division, his phone was seized. Rivera appeared very nervous and refused to provide officers with the passcode to the phone. Officers advised Rivera of his Miranda rights and proceeded to interview him regarding the incident on February 24, 2015. Rivera admitted being in the same area of the incident in question but made no further admissions and eventually requested his attorney.

\* \* \*

26. On February 26, 2015, officers traveled to several local schools in Springdale to make contact with various juveniles who were possibly victimized by Rivera. Officers first traveled to a middle school in Springdale to meet with the victim in incident #14-3003 from the report on May 20, 2014. Officers provided the victim with a photo lineup that included Rivera, and the victim positively identified Rivera from the lineup, saying "That's him! That's him!" The victim immediately fell into tears and began visibly shaking.

\* \* \*

33. On March 3, 2015, a search of Rivera's phone revealed that Rivera had his phone out during the above incidents either to film or photograph the incidents. The review of the phone also revealed videos of Rivera sexually preying on very young children; however, due to the sheer volume of these videos and photographs, it was not possible for officers to identify all of the children and/or young females.

4

34. In the review of Rivera's phone and electronics, officers noted they contained large quantities of adult pornography, as well as numerous videos of him talking to young girls, filming young children while they played, filming up the skirts of unidentified women, filming girls and women in and around public places, filming female's clothed buttocks, and attempting to film girls and women in changing rooms of businesses.

35. Rivera's phone also contained notes about the appearances, locations and times where young girls would be after school. Rivera's devices also depicted videos of Rivera engaging in sexual intercourse with several young females. Officers were able to identify a total of three victims and descriptions of the videos are set forth below. It is noted, however, that officers were unable to identify the other young females or the ages of the females from the videos.

36. On April 22, 2014, Rivera filmed the following video of D.S., a 4-year-old female victim.  The video shows Rivera approached D.S. while she was sitting under a stairwell at an apartment complex. Rivera then videoed himself taking the child's left hand and placing it on his penis and using the child's hand to masturbate his penis until he ejaculated. After he ejaculated, Rivera can be heard thanking the child.

37. On May 20, 2014, Rivera filmed the following video of J.G., a 5-year-old female victim. The video shows Rivera speaking with J.G. and having her watch him while he masturbates. Rivera then ejaculates into the face of the child, causing her to flee in terror.

38. Officers located an additional 21 videos of Rivera stalking, masturbating, or talking to young children wherein the children could not be identified and the dates of the video could not be determined.

* * *

75. For guideline purposes, with regards to Count One of the Superseding Indictment, Julian Rivera is accountable for the following: the offense involved the production of videos of three minor victims; the offense involved a minor who had not attained the age of 12; the material portrayed sadistic or masochistic conduct; the offense involved the commission of a sexual act or sexual contact; and the offense involved the defendant engaging in a pattern of sexual abuse or exploitation of a minor.

76. For guideline purposes, with regards to Count Three of the Superseding Indictment, Julian Rivera is accountable for the following: the offense involved a minor who had not attained the age of 12; the material portrayed sadistic or masochistic conduct; the offense involved the use of a computer or an interactive

computer service; and the defendant possessed at least seven (7) videos of child pornography (1 video = 75 images) for a total of 525 images of child pornography.

77. Further, considering the three categories of behavior as set forth in the Commission's recommendations in imposing sentencing in USSG §2G2.2 cases, it is believed the following factors apply: the defendant's collection of child pornography and child erotica included mostly videos rather than still photos; agents report defendant had a large volume of videos such that it was impossible to identify all of the victims; the investigation did not reveal that defendant was involved in an Internet community, did not reveal that he was chatting with other offenders or victims online, and did not reveal any file sharing of his collection of videos; defendant's conduct with victims encompasses ages 4 to 15; and although the defendant does not have any convictions for child-related crimes, he had been accosting and stalking children for several months at the time of his arrest based on reports to the police department.

(ECF No. 32 at 5-12).

Rivera, then twenty-one years of age, was sentenced on March 29, 2016 (ECF No. 35), to 360 months on Count One and 240 months on Count Three, terms to run consecutively, for a total of 600 months, followed by 25 years of supervised release, a $9,800 fine, and a $200 special assessment.   (ECF No. 38).   Rivera appealed to the United States Court of Appeals for the Eighth Circuit.   (ECF No. 41); *United States v. Rivera*, No. 16-1893, 673 Fed. Appx. 602 (8th Cir. Jan. 23, 2017).   On appeal, appointed counsel filed a brief under *Anders v. California*, 386 U.S. 738 (1967), and moved to withdraw.   (ECF No. 49-1 at 2).   In a supplemental brief, Rivera argued the sentence was substantively unreasonable.   *Id.*   He asserted the following:   the plea agreement was unfair because the conduct underlying a dismissed charge was used against him at sentencing; the Court erred by improperly applying U.S.S.G. § 4B1.5(b)(1) and by failing to consider relevant mitigating factors; the prosecutor defamed him by stating at sentencing that he would not change and had a high likelihood of recidivism; and defense counsel was ineffective for failing to object to the § 4B1.5 increase.   (ECF No. 49-1 at 2).

6

As Rivera had failed to move to withdraw his guilty plea, the Eighth Circuit found his claim that his plea agreement was not knowingly or voluntarily entered was not cognizable on direct appeal. (ECF No. 49-1 at 2)(citation omitted). The Eighth Circuit found the Court did not error in applying the 5-level increase. *Id.* Rivera's ineffective assistance of counsel claim was rejected because counsel objected to the § 4B1.5 increase. *Id.* Next, the Eighth Circuit found the sentence imposed was not substantively unreasonable as the sentence was a within-Guidelines-range sentence made after considering the 18 U.S.C. § 3553(a) factors. *Id.* at 3. As to Rivera's defamation claim, the Eighth Circuit held that the Government's argument was properly related to the sentencing factors and that a criminal appeal was not the proper vehicle to raise a defamation claim. *Id.* The judgment was affirmed and appointed counsel's motion to withdraw was granted. *Id.*

On August 14, 2017, Defendant filed a petition for writ of certiorari to the Supreme Court. (ECF No. 50). The petition was denied on October 02, 3017. (ECF No. 51); *Rivera v. United States*, 138 S. Ct. 244 (2017). Rivera filed the instant § 2255 motion on August 6, 2018. (ECF No. 52).

## II.  DISCUSSION

As grounds for relief, Rivera asserts that his conviction under both 18 U.S.C. §§ 2251(a) & (e) and 18 U.S.C. §§ 2252A(a)(5)(B) & (b)(2) was in violation of the Double Jeopardy Clause. He also asserts three separate ineffective assistance of counsel claims. Specifically, Rivera asserts: (1) counsel was ineffective as Rivera's plea was not knowingly and willfully made; (2) counsel was ineffective when he did not challenge the sufficiency of evidence of the conduct alleged in Count Three; and (3) counsel was ineffective for not raising a search and seizure

challenge.

## A. GROUND ONE—Double Jeopardy

In general, entry of a guilty plea waives a defendant's right to relief under § 2255 other than those issues related to jurisdiction. In other words, "[a] valid guilty plea . . . operates as a waiver of all non-jurisdictional defects or errors." *United States v. Staples*, 435 F.3d 860, 864 (8th Cir. 2006)(internal quotation marks and citation omitted).

> [A] guilty plea operates as a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

*Tollett v. Henderson*, 411 U.S. 258, 267 (1973).

The Eighth Circuit has held that "double jeopardy is a personal defense and not jurisdictional." *United States v. Herzog*, 644 F.2d 713, 716 (8th Cir. 1981)(citation omitted). Thus, unless Rivera's guilty plea was not knowing and voluntary, he may not proceed on the double jeopardy claim. *United States v. Glass*, No. 5:10-CR-50066, 2011 WL 6937602 at *2 (W.D. Ark. Nov. 9, 2011), *report and recommendation adopted*, 2012 WL 11035 (W.D. Ark. Jan. 3, 2012). For the reasons set forth below, the Court finds that Rivera's guilty plea was knowing and voluntary. Rivera's double jeopardy claim is foreclosed by his guilty plea and judgment of conviction. *United States v. Broce*, 488 U.S. 563, 569 (1989)(If the plea is counseled and voluntary, "then the conviction and plea . . . foreclose collateral attack [unless] the court had no power to enter the conviction or impose the sentence").

## B.  INEFFECTIVE ASSISTANCE OF COUNSEL STANDARD

As noted, grounds two through four are ineffective assistance of counsel claims.  In *Strickland v. Washington*, 466 U.S. 668 (1984), the Supreme Court set forth the standard to be applied to ineffective assistance of counsel claims.  To prevail on his ineffective assistance of counsel claims, Rivera must prove, by a preponderance of the evidence, two related but independent issues.  First, Rivera must show that counsel's performance was so deficient so as to not constitute counsel as guaranteed the defendant by the Sixth Amendment.  *Id.* at 687.  Second, that counsel's deficient performance materially and adversely prejudiced the outcome of the case. *Furnish v. United States of America*, 252 F.3d 950, 951 (8th Cir. 2001).

With respect to the first prong, "[w]hen a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  *Strickland*, 466 U.S. at 687-88.  The Supreme Court instructed:

> Judicial scrutiny of counsel's performance must be highly deferential.  It is all too tempting for a defendant to second-guess counsel's assistance after conviction or adverse sentence, and it is all too easy for a court, examining counsel's defense after it has proved unsuccessful, to conclude that a particular act or omission of counsel was unreasonable.  A fair assessment of attorney performance requires that every effort be made to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time.  Because of the difficulties inherent in making the evaluation, a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy.

*Id.* at 689.  A reviewing court "should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment."  *Id.* at 690.

9

With respect to the second prong, to prove an error was prejudicial Rivera must establish that "there is a reasonable probability that, but for counsel's unprofessional errors, the results of the proceedings would have been different."   *Strickland*, 466 U.S. at 694.   "[N]ot every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding."   *Id.* at 693.

The Eighth Circuit has set forth the two-prong *Strickland* test as follows:   "[w]hether counsel's performance was in fact deficient and, if so, whether the defendant was prejudiced by the inadequate representation.   If we can answer 'no' to either question, then we need not address the other part of the test."   *Fields v. United States*, 201 F.3d 1025, 1027 (8th Cir. 2000).

### C.   GROUND TWO—Counsel's Performance Coerced Rivera into Pleading Guilty

Rivera contends his counsel misled him and used coercion to persuade him to enter into a one-sided plea agreement with the Government that infringed on his Constitutional protections. (ECF No. 52 at 8).   Specifically, Rivera alleges his counsel provided ineffective assistance of counsel in advising him that:   because he had no criminal history he would receive a thirty year sentence if he accepted the plea; at the very most Rivera would receive a thirty year sentence; the guideline consideration was only a formality; unconvicted and/or uncharged acts could not be used against him as relevant conduct; he should waive the presentence investigation to expedite the process, with the promise that there would be no consideration of other elements or adjustments that would affect the sentence; it was imperative that Rivera agree to the conditions of the plea allocution or the Court would not accept the plea.   *Id.* at 8-9; (ECF No. 58 at 1-2).   In sum, Rivera argues that these representations indicate counsel's performance was so deficient as to render his plea unknowing and involuntary.   (ECF No. 52 at 9-10).

In the context of a guilty plea, the prejudice requirement focuses on whether the ineffectiveness of counsel affected the outcome of the plea process. *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). A decision to enter into a plea agreement cannot be knowing and voluntary when the plea agreement itself is the result of advice outside "the range of competence demanded of attorneys in criminal cases." *Id.* at 56.

Unfortunately for Rivera, review of the plea agreement and the transcript of the change of plea hearing[2] directly contradict his current assertions. The factual basis set forth in the plea agreement is quoted above. The factual basis includes reference to the iPhone containing other videos that fit the definition of child pornography. (ECF No. 21 at 4). Rivera specifically admitted to committing each of the elements of the crimes he was charged with and did not dispute the facts as set forth in the agreement. *Id.* at 4-5. The plea agreement specifically sets forth the maximum penalties for both Count One and Count Three of the indictment. *Id.* at 7. Rivera acknowledged in the agreement that there had been discussions about the possible guideline sentencing range but agreed

> that any discussions merely attempt to guess at what appears to be the correct guideline range and do not bind the district court. Further, the defendant acknowledges that the actual range may be greater than contemplated by the parties. In the event the guideline range is greater than the parties expected, the defendant agrees that this does not give him the right to withdraw his plea of guilty.

*Id.* at 11.

With respect to relevant conduct, the plea agreement provides:

> At the sentencing hearing, the government will be permitted to bring to the Court's attention, and the Court will be permitted to consider, all relevant information with respect to defendant's background, character and conduct, including the conduct

---

[2] Rivera consented to the entry of his guilty plea before the undersigned. A report and recommendation issued (ECF No. 22), objections were waived, and the district judge, the Honorable Timothy L. Brooks, adopted the report and recommendation (ECF No. 23).

that is the subject of this investigation for which he has not been charged up to the date of this Agreement, and/or which is the basis for any of the counts which will be dismissed pursuant to this agreement, as provided by § 1B1.3 of the Sentencing Guidelines.

(ECF No. 21 at 11).

Rivera acknowledged that the agreement is not binding on the district court and does not require the court to "hand down any specific sentence." *Id.* at 13.   In the plea agreement, Rivera made the following representations:

> a.   The defendant has read this agreement (or has had this agreement read to him/her) and has carefully reviewed every part of it with defense counsel.
> b.   The defendant fully understands this plea agreement and is not under the influence of anything that could impede defendant's ability to fully understand this plea agreement.
> c.   No promises, agreements, understandings, or condition have been made or entered into in connection with the decision to plead guilty except those set forth in this plea agreement.
> d.   The defendant is satisfied with the legal services provided by defense counsel in connection with this plea agreement and matters related to it.
> e.   The defendant has entered into this plea agreement freely, voluntarily, and without reservation and the defendant's desire to enter a plea of guilty is not the result of threats or coercion directed at the defendant or anyone connected with the defendant.

*Id.* at 14.   Counsel also represented that the plea was an informed and voluntary one.   *Id.*

At the change of plea hearing, Rivera was questioned to make sure he understood the nature of the charges against him, that he was voluntarily pleading guilty, and that he understood the consequences of his guilty plea.   (ECF No. 40 at 3).   Rivera indicated he understood the purpose of the hearing, had sufficient time to meet with his counsel and discuss entering into the plea agreement, and was satisfied with his counsel's services and advice.   *Id.* at 4.   Rivera indicated his guilty plea was a result of his own free will and that he understood the terms of the agreement. *Id.* at 6.   Rivera stated he had not been promised anything not contained in the plea agreement.

*Id.*

Rivera was advised of the maximum penalties for each count he was pleading guilty to. (ECF No. 40 at 7-8).   Rivera stated that he understood the penalties he faced on each count.   *Id.* at 7-8.   He was specifically advised that the term of imprisonment for Count Three could be imposed consecutively to the terms of imprisonment on Count One.   *Id.* at 8.   Rivera was specifically asked if he understood that "even though the Plea Agreement contemplates dismissing Count 2 of the Indictment, the conduct forming the basis for that count can be considered at sentencing when the court determines your sentence as relevant conduct."   *Id.* at 9.   Rivera indicated he understood.   *Id.*   Further, Rivera indicated he understood that his counsel could only give "his best estimate at this point of what your sentence might be and cannot guarantee what" Rivera's sentence would be.[3]   *Id.* at 10.

After the factual basis for the plea was recited, Rivera agreed that the facts were true and stated he was satisfied the Government could prove all those facts beyond a reasonable doubt to a jury, which would be sufficient to convict him of Count One and Count Three.   (ECF No. 40 at 12).   Before his plea was taken, Rivera was given the opportunity to ask any questions about what had been discussed.   *Id.* at 12-13.   He voiced no questions and indicated he felt he understood everything.   *Id.* at 13.   Rivera declined additional time to speak with his counsel.   *Id.*

A criminal defendant's "right to be apprised of the court's sentencing options . . . requires only that the court inform the defendant of the applicable mandatory minimum and maximum

---

[3] The PSIR also set forth the minimum and maximum penalties, set forth the relevant offense conduct, including the basis for Count Two of the Indictment and uncharged conduct, and indicated the guideline range was imprisonment for life which exceeded the statutory maximums.   (ECF No. 28).   The guideline range was reduced to the statutory maximums and calculated as 600 months of imprisonment, 360 months on Count One and 240 months on Count Three.   *Id.* at 21.

sentences." *Thomas v. United States*, 27 F.3d 321, 326 (8th Cir. 1994).   "For a plea to be voluntary . . . a defendant need not understand precisely how the sentencing guidelines will apply to his case.   A plea is knowing and voluntary if the district court informs the defendant of the minimum and maximum statutory penalties and the court's authority to sentence within that range."   *United States v. Guardado*, 863 F.3d 991, 993 (8th Cir. 2017).   Here, the plea agreement set forth the minimum and maximum statutory penalties, advised Rivera that relevant conduct would be considered, and informed him of the court's authority to sentence within the statutory terms.   At the change of plea hearing, Rivera was taken through this information step by step to ensure the advice was sufficient to establish a knowing and voluntary plea.

Regardless of what counsel advised Rivera, Rivera was aware of the statutory minimum and maximum penalties, that the sentences could be consecutive, and that relevant conduct could be considered.   Moreover, Rivera has made no showing that if he had known of the eventual guideline range, he would have gone to trial, which is required to demonstrate ineffective assistance of counsel in connection with erroneous advice in connection with a plea agreement. *Hill*, 474 U.S. at 57.   Rivera has not asserted any credible basis for challenging the validity of his guilty plea based on the advice of counsel.   Rivera has failed to demonstrate that he would be entitled to relief under the *Strickland* standard.

### D.   INEFFECTIVE ASSISTANCE OF COUNSEL—Sufficiency Of The Evidence On Count Three

Count Three charged Rivera with the possession of child pornography on his Apple iPhone including images of minors under the age of twelve.   Rivera contends the language of the Superseding Indictment is vague as to the description of the images on the phone.   According to

14

Rivera, it was later found during sentencing that there were thirty-four images that were considered child pornography.  Rivera contends many of the thirty-four images did not depict the elemental requirements to constitute child pornography.  Rivera contends any reasonable counsel would have requested an evidentiary hearing and required the Government to prove which images constituted child pornography thus precluding the use of an open number of images to increase his sentence.

The Government accurately points out that the guilty plea to Count Three forecloses Rivera's argument as to the sufficiency of the evidence.  *Tollett*, 441 U.S. at 267; *Broce*, 488 U.S. at 569.  Rivera's guilty plea constituted his admission that the Government had sufficient evidence to establish the elements of the offense of possession of child pornography as set forth in Count Three of the indictment.

Regardless of the issue of waiver, Rivera's argument is meritless.  Rivera does not argue that none of the images contained on his Apple iPhone met the definition of child pornography; or that none involved a minor female under 12; rather, he only contends that not all the images met the definition.

Title 18 U.S.C. § 2252A(a)(5)(B) makes it a crime to knowingly possess or access any "material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce . . . or that was produced using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce."  If "any image of child pornography involved in the offense involved a prepubescent minor or a minor who has not attained 12 years of age, such person shall be . . .  imprisoned for not more than 20 years."  18 U.S.C. § 2255A(b)(2).  So long as any of the images constituted

15

child pornography, Rivera was guilty of the crime charged.   Further, the sentence was appropriate since one or more of the videos involved a minor female under 12.

Regarding the sufficiency of the evidence on Count Three, the final PSIR states Rivera's iPhone contained "videos of Rivera engaging in sexual intercourse with several young females. Officers were able to identify a total of three victim and descriptions of the videos set forth below."

> 36.   On April 22, 2014, Rivera filmed the following video of D.S., a 4-year-old female victim.   The video shows Rivera approached D.S. while she was sitting under a stairwell at an apartment complex.   Rivera then videoed himself taking the child's left hand and placing it on his penis and using the child's hand to masturbate his penis until he ejaculated.   After he ejaculated, Rivera can be heard thanking the child.
>
> 37.   On May 20, 2014, Rivera filmed the following video of J.G., a 5-year-old female victim.   The video shows Rivera speaking with J.G. and having her watch him while he masturbates.   Rivera then ejaculates into the face of the child causing her to flee in terror.

(ECF No. 32 at 8).   The PSIR then describes an "additional 21 videos of Rivera stalking, masturbating, or talking to young children wherein the children could not be identified and the dates of the video could not be determined."   *Id.*   Further, "officers located 15 videos that were filmed from January 25 through January 26, 2015.   These videos appear to be Rivera documenting a rape."   *Id.* at 10.   Nine of the videos involved T.M., a 14-year-old victim.   *Id.*

Based on the above, Rivera's argument that counsel was ineffective in failing to challenge the sufficiency of the evidence on Count Three is without merit.

## E.   INEFFECTIVE ASSISTANCE OF COUNSEL—Failure To Challenge Search And Seizure Of The Cell Phone

Rivera states that at the time of his arrest on February 25, 2015, there was no search warrant or probable cause to seize his iPhone or any other electronic devices.   Rivera points out he was in

16

his residence and did not have the iPhone on his person.   Rivera contends that it was obvious from the detailed questions from law enforcement that his phone had been searched prior to the warrant being obtained.   Rivera maintains that he asked his counsel to review the data log report which would show the exact date and time of the intrusion to establish that the device was searched prior to consent being given or a valid search warrant being issued which would make the fruits of the search tainted and inadmissible.   According to Rivera, his counsel refused to challenge the search and seizure.

In response, the Government argues this claim is non-jurisdictional and therefore waived by Rivera's guilty plea.   Further, the Government points out that Rivera also misstates the facts.

The initial report made by the victim of the alleged kidnapping and sexual assault stated the suspect had a Gold iPhone in his hand during the assault.   (ECF No. 57-2 at 3).   Further, other identified victims reported Rivera had his cell phone out during the attacks.   *Id.*   During Detective Townsend's initial contact with Rivera at his home, Rivera admitted he owned a gold iPhone and that he used it to watch pornography.   *Id.* at 5.   An affidavit for a search warrant for the iPhone and various other electronic devices was submitted on February 26, 2015.   *Id.* at 1. The search warrant was signed that same day.   *Id.* at 7.   The records show that the iPhone was turned over for forensic testing on February 27, 2015, the day after the warrant was obtained. (ECF No. 57-4 at 1).

A valid "guilty plea waives all suppression issues not expressly reserved by a conditional plea."   *United States v. Villa-Madrigal*, 683 F.3d 924, 926 (8th Cir. 2012)(internal quotation marks and citation omitted).   "While a guilty plea is not invulnerable to a collateral attack in a post-conviction proceeding, the defendant's representations during the plea hearing carry a 'strong

presumption of verity' and 'pose a formidable barrier in any subsequent collateral proceedings.'"
*United States v. Kim Hong Thi Le*, 558 F. Supp. 2d 950, 958 (D.N.D. 2008)(*quoting Nguyen v. United States*, 114 F.3d 699, 703 (8th Cir. 1997)).

In this case, there is nothing to suggest the iPhone was searched prior to the search warrant being obtained.   In fact, the record suggests the exact opposite—that the phone was searched after the warrant was obtained.   Counsel's conduct in not raising the issue did not fall below an objective standard of reasonableness.   Rivera entered into a valid plea agreement, agreed during the change of plea hearing that the facts presented by the Government were correct, and the record contains nothing indicating counsel provided the type of deficient and prejudicial advise that would met the *Strickland* standard.

### III.   CONCLUSION

Based upon the foregoing, the undersigned hereby recommends that Rivera's motion to vacate filed pursuant to 28 U.S.C. § 2255 be DENIED and his petition be DISMISSED.

An appeal may not be taken in this matter unless the Court issues a certificate of appealability, which shall be issued only if "the applicant has made a substantial showing of the denial of a constitutional right."   28 U.S.C. §§ 2253(b) & (c)(2).   A "substantial showing" is a showing that "issues are debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings."   *Cox v. Norris*, 133 F.3d 565, 569 (8th Cir. 1997).   Based upon the above analysis of Rivera's § 2255 motion, the undersigned does not believe that there is any basis for the issuance of a certificate of appealability and, therefore, recommends that a certificate of appealability be denied.

**The parties have fourteen days from receipt of the Report and Recommendation in**

18

which to file written objections pursuant to 28 U.S.C. § 636(b)(1).    The failure to file timely objections may result in waiver of the right to appeal questions of fact.    The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.

DATED this 28th day of May 2020.

/s/ *Erin L. Wiedemann*

HON. ERIN L. WIEDEMANN
UNITED STATES MAGISTRATE JUDGE